## REYNOLDS METALS COMPANY v.
## DEPARTMENT OF REVENUE

Allan Hart, Lindsay, Nahstoll, Hart, Dafoe & Krause, Portland, represented plaintiff.

Carl N. Byers and Theodore W. de Looze, Assistant Attorneys General, Salem, represented defendant.

Decision for plaintiff rendered July 9, 1969.

EDWARD H. HOWELL, Judge.

The sole issue presented in this appeal is the true cash value of the buildings, machinery and fixed equipment at plaintiff's Troutdale plant for the tax year 1968-69. The value of the land is not in dispute.

The Troutdale plant was originally constructed by Alcoa in 1941 and 1942. The plaintiff acquired ownership in 1950. The plant, consisting of four pot lines plus other buildings and equipment common to an

aluminum reduction plant, was originally designed for a capacity of 72,000 tons per year.

Prior to 1960 the plaintiff had various disagreements with the Multnomah County Assessor and the State Tax Commission concerning the valuation of the Troutdale plant for ad valorem tax purposes. In 1961 the assessor valued the plant at $18,044,000. In 1961 the American Appraisal Company, which had been employed by the tax commission, appraised the Troutdale plant at $18,770,500.

The following are the true cash values of the subject property as determined by the Multnomah County Assessor for the years 1962 until 1968:

| | |
|------|-------------|
| 1962 | $18,187,424 |
| 1963 | 16,545,915 |
| 1964 | 14,445,002 |
| 1965 | 13,112,513 |
| 1966 | 12,852,107 |
| 1967 | 12,610,936 |

The plaintiff did not contest the above valuations and contends that from 1962 until 1968 the assessor recognized the increasing depreciation and obsolescence occurring in the plant and reduced the valuation each year as indicated above.

For January 1, 1968, the tax year in question, the Multnomah County Department of Revenue placed a value of $18,000,000 on the property. This amount was approved by the board of equalization and by the tax commission. The plaintiff contends that the true cash value of the subject property is not in excess of $10,000,000 as of January 1, 1968.

The plaintiff operates four aluminum pot lines with a total of 560 pots in the entire plant. With

certain minor exceptions the plant has operated 24 hours per day, 365 days a year since it began operation. In 1962 the aluminum market was depressed and the plaintiff operated only one pot line. A line was reopened during 1963 and a total of 39,000 tons produced; in 1964 another line was reopened and production reached 67,000 tons; in 1965 all four lines were operating and plaintiff's production reached 93,500 tons per year; in 1968 the plant produced 100,000 tons.

No substantial capital improvements have been made since 1960 with the exception of the construction of a casting house costing between 1.5 and 2 million dollars. According to the plaintiff the additions and deletions to the plant from 1962 through 1967 were duly and regularly reported to the assessor.

The appraiser for Multnomah County, as well as the representatives of the American Appraisal Company and Marshall and Stevens, Inc., who testified for the plaintiffs, used the cost approach in arriving at their valuation. The Multnomah County appraiser and Marshall and Stevens, Inc. used reproduction cost as the basis for their appraisals while the American Appraisal Company used replacement cost.

The appraiser from the American Appraisal Company used $50,000,000 as the replacement cost and deducted $24,500,000 for depreciation and $15,220,000 for functional obsolescence for a true cash value of $10,280,000 for the plant as of January 1, 1968.

The appraiser for Marshall and Stevens, Inc. used $49,587,451 as the reproduction cost and deducted $33,485,443 for depreciation and $6,243,250 for functional obsolescence for a true cash value of $9,858,758.

The county appraiser testified that he had numerous conferences with and assistance from State Tax

Commission personnel regarding how to appraise the Troutdale plant.

The Multnomah County appraiser started with a reproduction cost of $49,587,451. The plaintiff does not argue with the county's use of reproduction cost as a starting basis nor with the amount the county used for reproduction cost. The plaintiff disagrees with the county appraiser's method of determining depreciation and functional obsolescence and with the amounts assigned to those items.

The following summary shows that the three appraisals are not in substantial disagreement regarding the original replacement or reproduction cost and the amount of physical depreciation:

|  | Mult. Co. | American | Marshall and Stevens |
|---|---|---|---|
| Cost | $49,587,451 | $50,000,000 | $49,587,451 |
| Less: Physical Depreciation | 29,472,351 | 24,500,000 | 33,485,443 |
| Market Value Before Obsolescence | $20,115,100 | $25,500,000 | $16,102,008 |

All three appraisers recognize that the Troutdale plant has excess operating costs compared to a modern plant and computed functional obsolescence by capitalizing the excess labor costs.

As deductions for functional obsolescence the American Appraisal Company allowed $15,220,000 and Marshall and Stevens, Inc., $6,243,250.

The Multnomah County appraiser capitalized the excess labor costs at Troutdale at 8 percent for 23 years and found $11,115,100 as the amount of functional obsolescence. However, instead of deducting the

total amount of obsolescence as the other appraisers did, the county appraiser deducted only $2,115,000 of the $11,115,100 total and labeled the deduction as a "noncurable penalty."

It is difficult to understand the appraiser's reasons for deducting only a small portion of the total amount allowed for functional obsolescence in the plant. He testified that the 9 million dollars (the difference between the amount of functional obsolescence found and the amount allowed) represented the extra amount that would have been required to be spent on a reproduction plant to cure the extra costs.

■ One of the industrial appraisers who testified for the tax commission admitted that he could not explain why the entire amount of functional obsolescence found by the county appraiser was not deducted. Another witness for the commission stated that there is no basis for deducting functional obsolescence when the appraiser uses reproduction cost as compared to replacement cost. If this reason were valid it is difficult to understand why even the $2,115,100 was deducted for functional obsolescence.

If the entire amount of functional obsolescence found by the county had been deducted the results of the three appraisals would have been as follows:

|  | Mult. Co. | American | Marshall Stevens |
|---|---|---|---|
| Cost | $49,587,451 | $50,000,000 | $49,587,451 |
| Less: Physical Depreciation | 29,472,351 | 24,500,000 | 33,485,443 |
|  | $20,115,100 | $25,500,000 | $16,102,008 |
| Less: Functional Obsolescence | 11,115,100 | 15,220,000 | 6,243,250 |
| True Cash Value | $ 9,000,000 | $10,280,000 | $ 9,858,758 |

It should be noted that the Marshall and Stevens appraisal allows more for depreciation and less for functional obsolescence than the other two appraisals. However, when the two are added together the total deduction for depreciation and functional obsolescence is substantially the same as the amount found by the other appraisers for depreciation and functional obsolescence.

The tax commission offered testimony from two of its industrial appraisers: one found a true cash value of $22,000,000 for the plant as of January 1, 1968. This value was based on the American Appraisal Company's 1961 reproduction cost trended to January 1, 1968, plus additions to the plant since 1961. No deductions were made, however, for deletions during the same period.

The other witness for the tax commission testified that the "upper limit of value" for the Troutdale plant was $27,966,315, based upon a "modern counterpart plant" costing $75,000,000.

The primary criticism with the commission's values is that in spite of the increasing depreciation and obsolescence occurring in the plant each year, the tax commission's values represent a substantial increase over the 1961 appraisal of $18,000,000 made by the American Appraisal Company for the tax commission and are in excess of the 1954 true cash value of $19,382,808 found by the tax commission for January 1, 1954. From the 1954 valuation the assessor or the tax commission, or both, reduced the true cash value to $18,044,626 in 1961.

The same criticism applies to the Multnomah County appraiser's valuation of $18,000,000 in 1968. From 1962, after the appraisal by the American Appraisal Company for the tax commission, the assessor

gradually reduced the value from $18,187,424 to $12,610,396 in 1967. Again the reduction had to be made on account of the depreciation and obsolescence occurring during this period. Although plaintiff's production increased from 25,000 to 100,000 tons per year during this period, the plaintiff had as many pot lines in 1962 as it had in 1968.

The court, accompanied by counsel for the plaintiff and the tax commission, was conducted through the Troutdale plant and also through the plaintiff's new aluminum plant in Longview, Washington. The depreciation in the Troutdale plant was obvious, particularly in the roof and sides of some buildings, the roof and courtyard scrubbing towers, the mercury arc rectifier systems, and the carbon bake furnace. In regard to the latter, the plaintiff's plant manager testified that the maintenance expense of repairing flues amounted to $50,000 per month.

■ This court is not persuaded that the true cash value of the Troutdale plant, which has been gradually reduced because of the continuing depreciation and obsolescence, should suddenly jump from $12,610,936 in 1967 to $18,000,000 in 1968.

In determining the true cash value of the plant for 1967 the Multnomah County Department of Revenue reduced the prior year's valuation of $12,852,107 by approximately 2 percent. Applying this same percentage to the 1967 value of $12,610,936 results in a valuation of $12,358,717, which the court finds to be the true cash value of the subject property as of January 1, 1968.

The order of the tax commission is modified to the extent indicated herein.